R. Christopher Harshman, Esq. (248214)
 chris@packetlaw.com
David M. Shaby II (97871)
 david@ds4law.com
DAVID M. SHABY II & ASSOCIATES
11949 Jefferson Blvd. Ste 104
Culver City, California 90230
Telephone:  (310) 827-7171
Facsimile:   (310) 382-2092

*Attorneys for Petitioners Kate Scott and James Babinski*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Kate Scott, *et al*, | Case no. 2:17-cv-07329-RSWL (FFMx) |
|---|---|
| Plaintiff, | *Removed from LASC [BS169465]* |
| vs. | Assigned to the Hon. Ronald S.W. Lew |
| City Council for the City of Santa Monica, *et al*, | **REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |
| Defendants. | |

# TABLE OF CONTENTS

**Table of Contents** ...................................................................................................i

**Table of Authorities** ..............................................................................................ii

**Memorandum** ....................................................................................................... 1

   **I.  Introduction** ............................................................................................... 1

   **II. Argument**................................................................................................... 3

      A.  The Defendant Misstates Facts and Appeals to Unpersuasive Authority ...........3

      B.  Serious Questions Going to the Merits................................................................6

      C.  Hardship Balance Tips Sharply in Favor of the Petitioners ................................8

      D.  Likelihood of Irreparable Harm ..........................................................................8

      E.  Public Interest Favors Injunction........................................................................9

   **III. Conclusion** ..............................................................................................11

## Table of Authorities

Cases

*Akzo Nobel Salt v. Federal Mine Safety Commission*, 212 F.3d 1301 (D.C.Cir. 2000) .......... 4

*Alliance for the Wild Rockies v Cottrell*, 613 F3d 960 (9th Cir 2010) ...................................... 3

*Bell v. Vista Unified School Dist.*, 82 Cal.App.4th 672 (2000) ................................................ 1

*Bennett v. Lew*, 151 Cal. App. 3d 1177 (1984) ........................................................................ 9

*Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988) ........................................... 4

*City of Cleveland, Ohio v. City of Brook Park, Ohio*, 893 F.Supp. 742 (N.D. Ohio 1995) ..... 4

*City of Santa Monica v. FAA*, 9th Cir. no. 16-72827 ................................................................ 4

*Columbia Gas Transmission v. An Exclusive Natural Gas Storage Easement*, 688 F.Supp. 1245 (N.D.Ohio 1988) ................................................................................................... 9, 10

*Condor Corp. v. City of St. Paul*, 912 F.2d 215 (8th Cir. 1990) .............................................. 4

*Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002) ................................................................. 5, 8

*Fairfield Resorts v. Fairfield Mountains Property Owners Association*, 2006 WL 1889152 (W.D.N.C. 2006) ..................................................................................................................... 9

*Friends of Richards-Gebaur Airport v. FAA*, 251 F.3d 1178 (8th Cir. 2001) ......................... 5

*FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C.Cir. 1981) ................................................... 11

*Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir. 1996) ............................................. 4

*Hancock Fabrics v. Rutheven Associates*, 2006 WL 2459222 (E.D.Va. 2006) ....................... 9

*In re Acevedo*, 497 B.R. 112 (Bankr.D.N.M. 2013) ................................................................ 5

*In re Santa Monica* 2008 WL 6895776 (May 27, 2008) .................................................... 4, 10

*International Snowmobile Manufacturers v. Norton*, 304 F.Supp.2d 1278 (D.Wyo. 2004) ... 9

*Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F.Supp.2d 796 (N.D.Ohio 2008) . 11

*Nestle v. City of Santa Monica*, 496 P.2d 480 (Cal. 1972) ...................................................... 8

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102 (2003) ....................... 6

*Peterson v. D.C. Lottery & Charitable Games Control Board*, 1994 WL 413357 (D.D.C. 1994) ........................................................................................................................................ 9

*Serono Laboratories v. Shalala*, 158 F.3d 1313 (D.C.Cir. 1998) ......................................... 11

1  *Skysign Int'l v. City & County of Honolulu,* 276 F.3d 1109 (9th Cir. 2002) ......................... 4
2  *Trancas Prop. Owners Ass'n v. City of Malibu*, 138 Cal. App. 4th 172 (2006) ................. 1, 7
3  *U.S. v. City of Santa Monica*, 330 Fed. Appx. 124 (9th Cir. 2009) ............................... 8, 10
4  *U.S. v. Santa Monica*, no. 08-2695 (May 16, 2008) ........................................................ 10
5  *U.S. v. Westchester County*, 571 F.Supp. 786 (S.D.N.Y. 1983) ......................................... 10
6  *Winter v Natural Resources Defense Council, Inc.*, 555 US 7 (2008) ................................... 3
7  Statutes
8  49 U.S.C. § 47107 ............................................................................................................. 5
9  49 U.S.C. § 47153 ............................................................................................................. 5
10 49 U.S.C. § 47521 ............................................................................................................. 6
11 49 U.S.C. § 47524 ............................................................................................................. 6
12 Gov't Code § 54960.1 ....................................................................................................... 1
13 Treatises
14 California Civil Procedure Before Trial (4th ed Cal CEB) § 32.34 .................................... 3
15 Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3738 (4th ed.) ....................................... 7
16 Regulations
17 14 C.F.R. § 155.3 .............................................................................................................. 5
18 14 C.F.R. Part 161 ............................................................................................................ 6

# Memorandum

## I. Introduction

This is a Brown Act case, however the City Council for the City of Santa Monica ("Defendant") may try to spin it otherwise. Disingenuously, despite the fact that an attorney from the Defendant's own City Attorney's Office was present for both hearings before the Los Angeles County Superior Court and knows Judge Chalfant's tentative ruling, prepared prior to oral arguments, does not accurately reflect the decision of that court following those arguments, the Defendant relies (ECF No. 33, 9:6-22; 17:19-19:23) on that tentative ruling (Defendant's Request for Judicial Notice, Exhibit 19, ECF No. 33-23). The transcripts (submitted previously to this Court, ECF Nos. 40-2, 40-3) tell the real story – this remains a Brown Act petition, albeit one where Judge Chalfant (erroneously; ECF Nos. 40, 45) constrained to the question of whether the Defendant violated the Brown Act[1] when it approved entering into the settlement agreement during a closed session, despite the fact that a public hearing was required pursuant to the California State Aeronautics Act. (This decision by Judge Chalfant was erroneous and/or manifestly unjust, as it reflects a narrow reading of one interpreting case, *Trancas Prop. Owners Ass'n v. City of Malibu*, 138 Cal. App. 4th 172 (2006), while ignoring the express purpose of the Brown Act and the fundamental public policy codified therein and reinforced by interpreting courts.)

As such, the Defendant could have at any time made this action go away: "[D]uring the pendency of any action under section 54960.1, if the court determines the alleged Brown Act violation has been cured or corrected by the legislative body, the action filed pursuant to subdivision (a) shall be dismissed with prejudice. (§ 54960.1, subd. (e).)" *Bell v. Vista Unified School Dist.*, 82 Cal.App.4th 672, 684-85 (2000) (which the Defendant knows; *see, e.g.*, ECF No. 1-9, 9:20-24).

---

[1] Which Defendant conceded earlier in its Notice of Ruling; see ECF No. 1-18, 2:10-13, "…allegations that a Brown Act violation occurred because the City failed to conduct a public hearing as required under the Public Utilities Code to discuss shortening the runway at Santa Monica Airport prior to agreeing to enter into the Consent Decree in Closed Session on January 28.")

1  Rather than simply cure the Brown Act violations with open meetings and/or
2  hearings, the Defendant fights *desperately* to avoid having to cure the violation and put to
3  public scrutiny and input its closed session legislating – the original decision to enter into
4  the settlement agreement, which the Defendant admits was intentionally kept secret.
5  (Verified Amended Petition, ECF No. 6-4, ¶ 25.)

6  Worse, despite the pendency of not only this action, but an action before the D.C.
7  Circuit[2], the Defendant steamrolled ahead with plans built atop the foundation of the
8  settlement agreement, while the very validity of that agreement was being challenged
9  judicially. Indeed, the Defendant evidently awarded a construction contract two days
10 before its demurrer on this action was even heard! (ECF No. 33, 2:3-5; 9:6.)

11 Rather than responsibly await resolution of these matters, the Defendant
12 demonstrated its contempt for the judicial process and forged ahead. Any economic
13 hardship it might incur was of its own making, and begs the question – what will
14 ultimately cost the Defendant more, a cautious, modest delay in starting destruction (if
15 such is the outcome of this case), or the cost of putting everything back the way it was?
16 (The Defendant is purportedly spending more than $3.5 million on this misguided
17 destruction project – up to $7 million once the actual physical, unnecessary, destruction
18 of the runway is factored in. And that is without mentioning the disruption to air travel
19 the overnight and total closures will occasion.)

20 Petitioners Kate Scott and James Babinski ("Petitioners") posit, the reason the
21 Defendant won't simply cure the Brown Act violations by putting the decision to enter
22 into the settlement agreement to a public meeting, with public input, is because the
23 settlement agreement does *not* reflect the "will of the people." Petitioners note that a
24 group of over 8,700 affected "anti-airport" homeowners sought to protest the entry into

---

[2] ECF No. 6-1, p. 1 (identifying the action, *National Business Aviation Association, Inc. et al v. Michael P. Huerta, et al*, Docket No. 17-1054 (D.C. Cir.))

the settlement agreement[3], and prominent anti-airport activists David Goddard, the former chair of the City of Santa Monica's Airport Commission, and Alan Levenson, a resident of Santa Monica's Sunset Park neighborhood and the founder of the group No Jets Santa Monica Airport, provided statements and/or declarations in support of the Petitioners' action (ECF No. 1-16 (Declaration of David Goddard); Amended Verified Petition, ¶ 21).

The settlement agreement and consent decree is wildly unpopular and faces challenges on many fronts; *see*, *e.g.*, the amicus curiae briefs sought to be submitted in connection with this matter by the National Business Aviation Association ("NBAA") together with the Aircraft Owners and Pilots Association ("AOPA") (ECF No. 48) and the Santa Monica Airport Association ("SMAA") (ECF No. 47).

This rushed, back door, secretive deal violates the Brown Act, which the Defendant will not attempt to cure because it knows it cannot withstand the scrutiny of a public meeting.

The status quo must be preserved, pending resolution of this action.

## II.  ARGUMENT

"[T]he court in *Alliance for the Wild Rockies v Cottrell* (9th Cir 2010) 613 F3d 960, 965 … held that serious questions going to the merits and a hardship balance that tips sharply in favor of the plaintiff will support issuance of a preliminary injunction, if the other two elements of the *Winter* test—that there is a likelihood of irreparable harm and that the public interest favors a preliminary injunction—are also met." California Civil Procedure Before Trial (4th ed Cal CEB) § 32.34 (discussing *Winter v Natural Resources Defense Council, Inc.*, 555 US 7, 22 (2008)).

### A.  The Defendant Misstates Facts and Appeals to Unpersuasive Authority

The Defendant's filings omit many critical facts about its settlement agreement with the FAA and its predicates, facts which happen to contradict the Defendant's

---

[3] Resident Groups' Notice of Emergency Ex Parte Motion For: (I) Permission to Intervene; and (Ii) Objection to Settlement and Consent Decree filed January 31, 2017 in C.D. Cal. case *City of Santa Monica v. United States of America et al*, 13-CV-08046-JFW-VBK, ECF No. 53.

narrative. The Court accordingly should be wary of relying on the City's distorted account.  For example, the Defendant briefly acknowledges that one of the cases purportedly settled by the agreement was *City of Santa Monica v. FAA*, 9th Cir. no. 16-72827, but fails to discuss the substance of that case. In that docket, the Defendant appealed a 2016 FAA administrative decision – based upon a complaint filed at FAA by NBAA and third parties – that the City's obligation to operate SMO (including a full-length runway) endures until 2023. (ECF 40, 7:18-26; 1-5, 3:3-10.) Similarly, the City asserts that federal law preempts the PUC's regulation of SMO, but fails to disclose that, inconsistently, the Defendant long has asserted that the use of the property which comprises SMO is a "local land use matter" that should not be subject to FAA oversight. *See*, *e.g.*, *In re Santa Monica*, Director's Determination, 2008 WL 6895776, at *58 (May 27, 2008).

Further, the Defendant asserts that the California state law requirements are preempted, but doesn't explicate the argument – which is certainly not without controversy. See, e.g., *Gustafson v. City of Lake Angelus,* 76 F.3d 778, 784 (6th Cir. 1996); *Skysign Int'l v. City & County of Honolulu,* 276 F.3d 1109, 1117 (9th Cir. 2002); *Condor Corp. v. City of St. Paul*, 912 F.2d 215 (8th Cir. 1990); *City of Cleveland, Ohio v. City of Brook Park, Ohio*, 893 F.Supp. 742 (N.D. Ohio 1995). While these issues may yet be litigated, the proper place is not within the rushed, expedited, and, narrowly focused briefing schedule on an order to show cause re a preliminary injunction.

The settlement agreement not only contradicts decades of FAA precedent but is at odds with positions taken by FAA as recently as last year.  As this Court is aware, agency "flip-flops" are disfavored, and the agency's inexplicable reversal does not deserve any deference. *Akzo Nobel Salt v. Federal Mine Safety Commission*, 212 F.3d 1301, 1304-05 (D.C.Cir. 2000) ("the flip-flops here mark the Secretary's position as the sort of 'post hoc  rationalizations' to which courts will not defer"). *See also Bowen v. Georgetown University Hospital*, 488 U.S. 204, 213 (1988) ("[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely

inappropriate"); *In re Acevedo*, 497 B.R. 112, n.19 (Bankr.D.N.M. 2013) ("[a] court should not automatically accept an agency's litigation position as evidence of the agency's interpretation of the statute, especially when evidence suggests that the agency may have changed its position as part of the litigation"). The FAA's inexplicable sudden shift in position strongly implicates its new, factually anemic, opinion as a prejudged political conclusion subject to little if any deference. See *Davis v. Mineta*, 302 F.3d 1104, 1112 (10th Cir. 2002).

Further, the Settlement Agreement also incorporates other acts that, *by law*, require public hearings and input and legislative acts done in open session of the U.S. Congress. 49 U.S.C. § 47107(h) requires the publication of any *modification* of airport obligations under the Grant Assurances in the Federal Register and to *solicit public comment* before it can become effective. The Surplus Property Act also dictates: "[B]efore the Secretary may waive any term imposed under this section that an interest in land be used for an aeronautical purpose, the Secretary must provide notice to the public not less than 30 days before waiving such term." 49 U.S.C. § 47153(c). (There must also be an affirmative finding by the FAA that a release will benefit aviation. *See* 49 U.S.C. § 47153(a); 14 C.F.R. § 155.3(a); *Friends of Richards-Gebaur Airport v. FAA*, 251 F.3d 1178 (8th Cir. 2001).)

Additionally, without an act of Congress, there is no statutory authority that provides for the release of the Defendant from its Grant Assurances obligations. *See*, *e.g.*, 49 U.S.C. § 47107(a)(8) (requiring approval from the Secretary of Transportation prior to a *temporary* closure of an airport for a nonaeronautical purpose). Too, both 49 U.S.C. § 47107(h)(1) and (2) speak only to *modifying* an assurance, with no authorization whatsoever to *remove* entirely any grant assurance obligation.

The Surplus Property Act likewise binds the FAA which, absent the conditions set forth above (which are not present here), cannot enter into the release of obligations set forth in the Settlement Agreement without Congress specifically granting it the ability to

do so. *See*, *e.g.*, the recent Congressionally authorized releases of St. Clair and St. Marys (Pub. L. 113-285 and Pub. L. 114-328, § 2829D, respectively).

Finally, the Defendant's concession (p. 2, footnote 1) that "[t]he purpose of a shorter runway is to reduce the number of jet operations at the Airport" is surprising, as it specifically triggers the need for a study under the Airport Noise and Capacity Act of 1990 ("ANCA"), codified at Chapter 475 of Title 49 of the United States Code, 49 U.S.C. § 47521 *et seq.* ANCA provides that a noise or other access restriction on "Stage 3" or quieter aircraft[4] may be implemented only if a study conducted under 14 C.F.R. Part 161, Subpart D, justifying the restriction, is prepared for and approved by FAA. 49 U.S.C. § 47524(c). There is no provision for the waiver of this requirement of ANCA.

Accordingly, any representations the FAA has made in the context of the acts complained of in this litigation is of little to no persuasive value.

### B. Serious Questions Going to the Merits

The public *meetings* the Defendant has held do not meet the requirements of the California Public Utilities Code and Government Code, set forth in the Petitioners' *ex parte* application, an issue that must be litigated in this action and which is not precluded by a snippet purportedly from the California Department of Transportation, offered without context. *People ex rel. Kennedy v. Beaumont Inv., Ltd.* (2003) 111 Cal. App. 4th 102, 118 ("Defendants' reliance on the memorandum [evidence both of the City's actual practice and of its interpretation of its own ordinance] is misplaced").

The Defendant continues to try to obfuscate the issue here: The Defendant, treating the decision to enter into the Settlement Agreement as a *fait accompli*, points to public meetings held regarding the *implementation* of that agreement, but has never corrected the fundamental, foundational, fatal flaw here. The Defendant was required to hold a public *hearing* prior to acquiring rights in property (which of course it did, else what was to be recorded? Verified Amended Petition (ECF No. 6-4), ¶¶ 11-12, 14, 31, 47)

---

[4] Virtually all jets operating at SMO – and in the national airspace system – are Stage 3 or quieter. 49 U.S.C. § 47534(a).

or agreeing to realign the Airport's existing runway. Again, Judge Chalfant heard the Defendant's arguments that "shortening" is not "realigning," and rejected them. The definitions and statutory requirements found in the California State Aeronautics Act are not ambiguous, and the Defendant did not abide by them. That alone is a Brown Act violation which must be cured, or else the Defendant's decision to enter into the Settlement Agreement, and all acts stemming therefrom, are null and void.

Additionally, Petitioners contend the express purpose and the spirit of the Brown Act is not reflected in Judge Chalfant's erroneous and/or manifestly unjust decision to limit their allegations solely to the violation of statute(s) expressly requiring a public hearing. *Trancas*, *supra*, does not support such a narrow constraint on the "litigation exception," and indeed advances the policy that the (judicially construed and *not* (contrary to Defendant's assertions; ECF No. 33, 9:8-11) expressly provided for within the Brown Act) exception to the Brown Act's requirement for open meetings that permits a legislative body to agree to settle litigation in closed session "is not to be used as a subterfuge to reach nonlitigation oriented policy decisions." *Trancas*, *supra*, 138 Cal. App. 4th at 186.

"The policy underlying the Brown Act is that public boards and agencies exist to aid in the conduct of the people's business; the law is intended to mandate open and public actions and deliberations." *Page v. MiraCosta Cmty. Coll. Dist.*, 180 Cal. App. 4th 471, 505 (2009).

"Orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal; however, it is well-settled that state court rulings do remain binding on the parties unless and until formally set aside by the federal district court." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3738 (4th ed.) Petitioners urge this Court to set aside Judge Chalfant's erroneous decision (ECF No. 40) and permit this matter to be fully litigated on all the merits.

7
REPLY TO RESPONSE TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

### C.  Hardship Balance Tips Sharply in Favor of the Petitioners

In regard to the balance of the equities, jets have operated at SMO for more than fifty years, *Nestle v. City of Santa Monica*, 496 P.2d 480 (Cal. 1972), and the Defendant has operated the SMO runway in substantially its current configuration since shortly after World War II. There are no special circumstances that differentiate SMO from the thousands of general aviation airports around the country that serve their communities every day. In prior SMO-related litigation, the Ninth Circuit concluded that the balance of equities favored an injunction when the Defendant sought to restrict access: "[A] large disruption to air traffic is avoided and Santa Monica is required to preserve the status quo only while FAA proceedings conclude." *U.S. v. City of Santa Monica*, 330 Fed. Appx. 124, 125 (9th Cir. 2009).  *See also Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) ("the state entities involved in this case have 'jumped the gun' … by entering into contractual obligations that anticipated a pro forma result. In this sense, the state entities are largely responsible for their own harm").

The Defendant faces only economic harm of its own design; it could, and should, have waited until the multiple lawsuits challenging the propriety of its entering into the consent decree and settlement agreement were resolved. It did not.

In contrast, the Petitioners, and the rest of the public, will be deprived of the full use of the Airport, should the Defendant be permitted to proceed with its intended destruction of this valuable and irreplaceable resource.

### D.  Likelihood of Irreparable Harm

As established in their *ex parte* application (ECF No. 6-1, 5:15–7:9 (starting at page 7 of 14)) and as further set forth in the Declarations of James Babinksi (ECF No. 22), Kate Scott (ECF No. 24), and Howard Israel (ECF No. 23), filed in connection with an opposition (ECF No. 21) to which the Defendant filed a reply (ECF No. 26), Petitioners (and the public) will be subject to the likelihood, if not the certainty, of irreparable harm. This risk includes a risk of physical harm for anyone piloting or being transported in an airplane departing from the Airport, including the Petitioners. The risk is also increased

for those living below the departure path of the Airport. "Risk of harm to persons and property and loss of tenants are injuries which cannot be measured in damages." *Bennett v. Lew*, 151 Cal. App. 3d 1177, 1185 (1984).

Further, Petitioners (and the public) will be denied access to a significant portion of the runway. A party need not have a direct interest in a real property dispute to be irreparably harmed; that a party will endure consequences of such a dispute is sufficient. *Peterson v. D.C. Lottery & Charitable Games Control Board*, 1994 WL 413357, at *4 (D.D.C. 1994). In *Fairfield Resorts v. Fairfield Mountains Property Owners Association*, 2006 WL 1889152, *4-5 (W.D.N.C. 2006), a threatened eviction from – and demolition of – a leased building constituted irreparable harm. *See also Columbia Gas Transmission v. An Exclusive Natural Gas Storage Easement*, 688 F.Supp. 1245, 1250-51 (N.D.Ohio 1988) (injunction ordered to prevent irreparable harm to utility and customers from shutdown of gas storage field); *Hancock Fabrics v. Rutheven Associates*, 2006 WL 2459222, *2 (E.D.Va. 2006) (tenant obtained preliminary injunction to block foreclosure of property); *International Snowmobile Manufacturers v. Norton*, 304 F.Supp.2d 1278, 1287 (D.Wyo. 2004).

Further, as set forth above, the FAA has – until this recent "flip-flop," consistently opined that restrictions on operations at SMO would cause irreparable harm, including to airspace because of the shift of traffic to other LA-area airports as well as the accompanying environmental consequences.

Finally, *even if* true that the reduced runway will reduce jet operations (and this is certainly not conceded) *at SMO*, inevitably that traffic will be relocated to other communities, which certainly will experience environmental considerations worthy of analysis. The status quo must be preserved while all these factors are examined.

E. **Public Interest Favors Injunction**

The Defendant endeavors to portray the Airport in a negative light – citing unsubstantiated health, environmental, and safety concerns – in order to claim that the truncation of its runway would be in the public interest. These assertions wrong on their

face. *See*, *e.g.*, *In re Santa Monica*, 2008 WL 6895776, at *45 ("[t]here are over 800 airports today that were built and improved during WWII, and none of them was originally built or improved with today's jets in mind, yet thousands of jet operations take place *safely* every day on these airports") (emphasis in original). Moreover, the settlement agreement which the Defendant purports to be evidence of FAA concurrence actually departs from and is grossly inconsistent with decades of FAA precedent. Notably, in 2008 FAA itself obtained an injunction from this Court to prevent the enforcement of a City ordinance that prohibited the operation of larger jets at SMO – essentially, a paper ban with much the same goals as those that the Defendant now seeks to accomplish through physical modifications. *U.S. v. Santa Monica*, no. 08-2695, Order Granting Preliminary Injunction (May 16, 2008) (Wu, J.). That injunction subsequently was upheld by the Ninth Circuit, which explained that:

> Santa Monica is not likely to prevail. … This being so, irreparable injury is presumed. … And the balance of equities tips in favor of the FAA: a large disruption to air traffic is avoided and Santa Monica is required to preserve the status quo only while FAA proceedings conclude. Given the safety history of Category C and D aircraft at SMO, the FAA's role in ensuring aviation safety, and the potential disturbance to air traffic around the Los Angeles area, the preliminary relief requested (and awarded) is in the public interest.

*U.S. v. Santa Monica*, *supra*, 330 Fed. Appx. at 125-26 (9th Cir. 2009) ). *See also U.S. v. Westchester County*, 571 F.Supp. 786, 797-98 (S.D.N.Y. 1983) ("[f]lights in and out of other airports are not an adequate substitute for the flexibility provided by business and corporate air flights in and out of the Airport … On the issue of irreparable harm, plaintiffs have demonstrated negative impact on the airspace in the New York City metropolitan area and beyond, which cannot be measured in monetary damages").

Other courts similarly have recognized that a "peculiarly vital public interest" fulfills this factor. *Columbia Gas Transmission*, supra) (noting "importance of the public interest sought to be protected" in natural gas reserves). In contrast, a nebulous concern about public safety that would "cause the irreversible closure of numerous stores that

serve their surrounding communities" is not in the public interest. *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F.Supp.2d 796, 812 (N.D.Ohio 2008). Additionally, the public interest factor is intertwined with the first factor, the likelihood of success. *See, e.g.*, *Serono Laboratories v. Shalala*, 158 F.3d 1313, 1326 (D.C.Cir. 1998). "Denying an injunction will immediately defeat the public interest in maintaining the status quo pending a final determination on the merits." *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1094 (D.C.Cir. 1981).

An injunction against the Defendant in this case is equally meritorious, because of the widespread consequences for aviation at stake – at SMO and beyond, for a wide variety of pilots and businesses. Likewise, though the Defendant may have unwisely entered into a construction project while not one, but two, actions were pending that could ultimately require it to "undo" any construction/destruction projects concerning the Airport, the costs the Defendant might incur are far eclipsed by the cost (presumably *at least* the same $3.52-7 million dollar price tag the Defendant will spend enacting its intended alterations), which does not even address the impact to the aviation users of, and businesses located at, the Airport, during any closures that might be necessary for the destruction and then subsequent reconstruction.

### III. CONCLUSION

Serious questions exist as to the correct standard to apply under the Brown Act, and Petitioners assert the Defendant's closed session decision to enter into the settlement agreement was a clear violation of the open meeting requirements of that Act. The Defendant will incur no harm not of its own making if enjoined pending the determination of this case on the merits, whereas the harm to the Defendant *and* the public in doubling the costs and closing the airport (however temporary) for needless destruction and subsequent reconstruction, far outweighs this consideration. Finally, irreparable harm is more than likely, and the public interest favors maintaining the status quo.

The Defendant, having demonstrated its lack of respect for the judicial process and intent to press forward while serious questions remain unresolved, must be enjoined.

Respectfully submitted,

DAVID M. SHABY II & ASSOCIATES

Date: October 14, 2017    By: /s/ R. Christopher Harshman
R. Christopher Harshman, Esq.
Attorneys for Petitioners Kate Scott and James Babinski