O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATE SCOTT, an individual; and JAMES BABINSKI, an individual,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITY COUNCIL FOR THE CITY OF SANTA MONICA, the governing body of the City of Santa Monica which operates the Santa Monica Municipal Airport; and DOES, 1 through 10, inclusive,<br><br>　　　　　Defendants. | CV 17-07329 RSWL (FFMx)<br><br>**Order re: Order to Show Cause re Preliminary Injunction** [6]**; Request for Reconsideration re Order on Motion for Reconsideration** [45]**;** *Ex Parte* **Applications to File Amicus Briefs** [47], [48] |

　　　Currently before the Court is Plaintiffs Kate Scott and James Babinski's (collectively, "Plaintiffs") *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [6]. Specifically, Plaintiffs seek to enjoin Defendant City Council for the City of Santa Monica ("Defendant") from taking any action to shorten the runway of the Santa Monica Municipal Airport ("Airport").  Pls.' *Ex Parte*

1

Appl. for TRO and Order to Show Cause re Prelim. Inj. ("Appl.") 1:21-26, ECF No. 6-1. The Court, having reviewed all papers and arguments submitted pertaining to this Application, **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** the request for preliminary injunction [6] and terminates the operative temporary restraining order.

## I. BACKGROUND

On April 28, 2017, Plaintiffs filed a Verified Petition for Writ of Mandate and Complaint for Injunctive and Declaratory Relief ("Complaint") [1-2] in Los Angeles County Superior Court ("Superior Court"). In their Complaint, Plaintiffs allege that Defendant violated California law, including the Brown Act, by entering into a consent decree ("Consent Decree") with the United States of America and the Federal Aviation Administration ("FAA") in a closed session.

After the Superior Court dismissed Plaintiffs' Brown Act claims with prejudice, Plaintiffs filed their Amended Complaint [1-19] on September 28, 2017. Defendant then removed the Action to this Court on October 5, 2017 based on federal question jurisdiction. Notice of Removal, ECF No. 1.

On October 6, 2017, Plaintiffs filed their *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Application")
///

[6]. Defendant failed to file an opposition.[1] On October 8, 2017, this Court granted the Application and enjoined Defendant from taking any action to shorten the Airport runway. Order re Pls.' *Ex Parte* Appl. for TRO ("Order re TRO"), ECF No. 12. As discussed in detail below, had Defendant opposed Plaintiffs' Application with the information currently before the Court, the Court would not have granted the temporary restraining order ("TRO"). Plaintiffs' evidence included with their Application alone compelled injunctive relief.

Later on October 8, 2017, Defendant filed its *Ex Parte* Application for Reconsideration re Order on Motion for TRO [14]. This Court subsequently denied reconsideration based on Defendant's failure to satisfy procedural requirements but granted expedited briefing on the Order to Show Cause ("OSC") re Preliminary Injunction. Order re Def.'s Appl. for Recons., ECF No. 32. Defendant opposed issuance of a preliminary injunction [33], and Plaintiffs replied [50].

///

---

[1] It is unclear whether Defendant is aware of *ex parte* procedures regarding timing. In numerous filings before this Court, Defendant complains about the Court granting the temporary restraining order before Defendant filed an opposition. However, Defendant's Opposition was due on October 7, 2017 by 10:41 a.m., twenty-four hours after Plaintiffs filed their Application. Defendant does not reveal when it intended to file an opposition, but Defendant had not filed any response by 2:23 p.m. on October 8, 2017 when this Court issued the Order. In fact, Defendant waited until 10:14 p.m. on October 8, 2017—almost thirty-six hours after the opposition was due—to file anything.

## II. DISCUSSION

**A.  Legal Standard**

   1.  *Ex Parte* Relief

   *Ex parte* applications are for extraordinary relief. For *ex parte* relief to be granted, "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).  The moving party also must be without fault in creating the crisis that requires *ex parte* relief, or the moving party must establish excusable neglect caused the crisis.  Id.

   2.  Preliminary Injunction

   Injunctive relief is also an "extraordinary remedy."  Winter v. Nat. Res. Def. Council Inc., 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Id. at 20.

   The Ninth Circuit employs a sliding scale when considering a plaintiff's showing as to the likelihood of success on the merits and the likelihood of irreparable harm.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  "Under this approach, the elements of the preliminary

injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id. Therefore, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135.

**B. Analysis**

    1. Defendant's Request for Judicial Notice Is **GRANTED**

Defendant requests the Court take judicial notice of twenty-one public and historical records. Def.'s Req. for Judicial Notice ("RJN"), ECF No. 33-3. Plaintiffs did not oppose these requests. Because public and historical records are properly subject to judicial notice pursuant to Federal Rule of Evidence 201, the Court **GRANTS** Defendant's Request for Judicial Notice in its entirety. See Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1064 n.7 (9th Cir. 1998)(taking judicial notice of State Department of Health records); Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 641 n.3 (9th Cir. 1993)(taking judicial notice of trademark registrations); Demos v. City of Indianapolis, 302 F.3d 698, 706 (7th Cir. 2002)(taking judicial notice of city ordinances).

///

### 2. Defendant's Evidentiary Objections

#### a. *Defendant's Objections to the Declaration of Christopher Harshman Are **OVERRULED***

Defendant objects to the Declaration of R. Christopher Harshman ("Harshman Declaration") [6-1] filed in support of Plaintiffs' Application. Specifically, Defendant contends that the Harshman Declaration is improper expert opinion, irrelevant, lacking in foundation, and not helpful to the trier of fact. Def.'s Objs. to Decl. of R. Christopher Harshman ("Objs.") 2:8-9, ECF No. 33-1. Additionally, Defendant claims that "given that [Harshman] is a counsel of record in this case, any testimony he provides is especially inappropriate." Id. at 5:2-3 (citing Cal. R. Prof. Conduct 5-210).

The Harshman Declaration is relevant and helpful to the trier of fact in that it provides information about the effects of shortening the runway. See, e.g., Harshman Decl. ¶¶ 3-4, 6. Moreover, it does not lack foundation because Harshman explains his assertions come from "personal observations and calculations." Id. ¶ 3. Further, this Court is not bound by the California Rules of Professional Conduct, which are not even evidentiary rules to begin with, so Harshman may testify.

Finally, Harshman may properly provide expert testimony as he is "a certificated pilot with an instrument rating, and fl[ies] airplanes from and to

the [Airport] regularly." Id. ¶ 2; see 14 C.F.R. § 61.65 (instrument rating requirements, including hours of simulated and actual flight). In fact, in the past two years, at least ninety-nine times, Harshman has departed from or landed on the runway to be shortened by the Consent Decree. Harshman Decl. ¶ 2. This experience allows him to testify in this case. See Fed. R. Evid. 702; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993).

As such, Defendant's objections to the Harshman Declaration are **OVERRULED**.

   b. *Defendant's Objections to Plaintiffs' Evidence in Support of Reply Are **OVERRULED** as Moot*

Defendant also objects to the Declarations of Plaintiff James Babinski [22], Plaintiff Kate Scott [24], and Howard Israel [23], which Plaintiffs mention in their Reply. See Pls.' Reply in Supp. of Appl. ("Reply") 8:22-26, ECF No. 50. Because the Court does not consider this evidence, the objections are **OVERRULED as moot**.

  3. <u>Plaintiffs' Request for Reconsideration re Order on Motion for Reconsideration Is **DENIED**</u>

On October 13, 2017, the Court denied Plaintiffs' *Ex Parte* Application for Reconsideration of Superior Court Decisions Regarding Interpretation of the Brown Act ("Order re Reconsideration"). Order re Pls.' *Ex Parte* Appl. for Recons., ECF No. 43. Plaintiffs were

7

not entitled to the extraordinary remedy of *ex parte* relief since Plaintiffs failed to establish they were not at fault for, or that only excusable neglect caused, the urgency. Id. Plaintiffs immediately filed their Request for Reconsideration re Order on Motion for Reconsideration ("Request for Reconsideration"), claiming the Court improperly relied on the ten-day deadline for motions for reconsideration in California. Pls.' Req. for Recons. re Order on Mot. for Recons. ("Req. for Recons.") 1:17-27, ECF No. 45. However, Plaintiffs misconstrue the Order re Reconsideration.

The Court did not rule on the merits of Plaintiffs' Request for Reconsideration, including whether Plaintiffs could have *successfully* brought a motion for reconsideration in the Superior Court. Rather, the Court found Plaintiffs did not meet the standard for *ex parte* relief due to their delay in seeking relief. California Civil Procedure Code section 1008(a) is one example of how Plaintiffs could—and should—have sought relief sooner. Plaintiffs themselves suggest the alternative avenue of seeking a writ from the California Court of Appeal. Req. for Recons. 1:26-27.

The problem with Plaintiffs' original *Ex Parte* Application for Reconsideration of Superior Court Decisions Regarding Interpretation of the Brown Act is that Plaintiffs did *nothing* until October 12, 2017—two months after the Superior Court's decision—despite believing that construction was set to begin October 9,

2017. At this late stage, Plaintiffs can only blame themselves for the urgency necessitating *ex parte* relief, as opposed to other relief, including on a regularly noticed motion. Thus, Plaintiffs' Request for Reconsideration [45] is **DENIED**.[2]

    4. *Ex Parte* Applications to File Amicus Briefs Are **GRANTED in part and DENIED in part**

National Business Aviation Association and Aircraft Owners and Pilots Association ("NBAA & AOPA") and Santa Monica Airport Association ("SMAA") filed two *Ex Parte* Applications to File Amicus Briefs [47, 48] in conjunction with Plaintiffs' Application. Each applicant maintains that *ex parte* relief is warranted based on the expedited briefing schedule for the OSC re Preliminary Injunction. SMAA's *Ex Parte* Appl. to File Amicus Br. ("SMAA's Appl.") 5:19-23, ECF No. 47; NBAA & AOPA's *Ex Parte* Appl. to File Amicus Br. ("NBAA & AOPA's Appl.") I:7-10, ECF No. 48.

These Applications cannot be heard on regular motions because the preliminary injunction will be decided before any motion can be heard. Moreover,

---

[2] The Order re Reconsideration does not preclude Plaintiffs from seeking reconsideration on a regularly noticed motion. With respect to Plaintiffs' request for the Court to waive Local Rule 7-3 requirements, Req. for Recons. 2:3-6, the Court reserves its ruling until Defendant's Motion for Relief from Local Rule 7-3 [42] is decided. Because the Superior Court's dismissal of the Brown Act claims remains intact, the Court does not reach the merits of such claims. Consistent with the Superior Court's decision, this Court considers only the narrow issue of whether Defendant violated California Public Utilities Code regarding shortening the runway. See RJN, Ex. 20 at 488.

neither applicant is at fault for this urgency.  Thus, the Court **GRANTS** NBAA & AOPA's *Ex Parte* Application to File Amicus Brief ("NBAA & AOPA's Application") [48], **GRANTS in part** SMAA's *Ex Parte* Application to File Amicus Brief ("SMAA's Application") [47], and considers the arguments therein.  <u>See</u> <u>Mission Power Eng'g</u>, 883 F. Supp. at 492; <u>see also</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1260 (9th Cir. 1982)("The district court has broad discretion to appoint amici curiae."), <u>abrogated on other grounds by</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

While the Court permits SMAA to appear as amicus curiae, the Court declines to permit SMAA to file additional briefing in connection with the Court's OSC re Preliminary Injunction, which would delay the Court's decision.  <u>See</u> SMAA's Appl. 1:17-20, 5:19-20. The expedited briefing schedule has been in place since October 10, 2017.  Order re Def.'s *Ex Parte* Appl. for Recons.  And SMAA clearly knew about this expedited briefing schedule as it prompted SMAA's Application on October 13, 2017.  <u>See</u> SMAA's Appl. 5:19-23.  SMAA could have filed its brief in conjunction with SMAA's Application [47], as NBAA & AOPA did with theirs [48]. <u>See</u> NBAA & AOPA's Appl. I:18-23 (including amicus brief, which was "not intended to delay or interfere with the promptness of the proceedings required in this matter").  Because SMAA cannot establish its failure to file its Amicus Brief was not SMAA's fault or the product of excusable neglect, *ex parte* relief is

unwarranted as to providing SMAA additional time to file its Amicus Brief. Thus, SMAA's Application [47] is **DENIED in part** as to that request. See <u>Mission Power Eng'g</u>, 883 F. Supp. at 492.

### 5. <u>Plaintiffs' Application for Preliminary Injunction Is **DENIED**</u>

Plaintiffs fail to satisfy the <u>Winter</u> test to enjoin Defendant from shortening the Airport runway.

#### a. *Success on the Merits*

Plaintiffs claim that Defendant violated California Public Utilities Code by not holding public hearings and securing permits before it "acquire[d] runway protection zones" and "extend[ed] or realign[ed] an existing runway" under the Consent Decree. Appl. 7:24-8:2; <u>see also</u> Reply 6:24-7:1. Additionally, Plaintiffs maintain a public hearing was required for "[t]he nightly closing, and entire Airport closing for 10 days in December." Appl. 8:7-8.

##### i. *Defendant Did Not Need a Permit*

Under California Public Utilities Code section 21664.5, an amended airport permit is required for every airport expansion, including "acquisition of runway protection zones" and "realignment of an existing runway." This statute is inapplicable to this Action because Defendant is not expanding the Airport under either of the foregoing definitions.

Based on evidence finally before the Court, it is apparent Defendant did not acquire runway protection

zones. See Decl. of Stelios Makrides ("Makrides Decl.") ¶ 9, ECF No. 37. Rather, the Consent Decree refers to runway safety areas, which are distinct from runway protection zones. RJN, Ex. 18 at 468; see also Decl. of Susan Cline ("Cline Decl."), Ex. G at 263, ECF No. 34 (Figure A showing runway safety area *and* runway protection zone).

Moreover, it is now clear that Defendant did not need an airport permit or public hearing for "realignment of an existing runway." The California Department of Transportation, Division of Aeronautics, ("DOT") is the agency charged with reviewing and approving airport permits under California Public Utilities Code. Def.'s Resp. to Order to Show Cause ("Resp.") 13:6-7, ECF No. 33. The DOT informed Defendant that the runway shortening at issue is not a realignment or extension, so Defendant did not need a permit. Makrides Decl., Ex. 1.

                ii. *Defendant Did Not Need a Public Hearing*

As discussed in the Court's Order granting the TRO, California Public Utilities Code section 21605 did not require Defendant to hold a public hearing because under that statute, a public hearing "may," not must, be conducted. Order re TRO 5 n.2; see also Resp. 14:20-28 (noting this statute does not apply to temporary runway closings for construction).

Additionally, under California Public Utilities

Code section 21661.6, prior to acquisition of land or an interest in land therein with plans to expand or enlarge an existing airport, a political subdivision must conduct a public hearing on the plan. However, this statute is inapplicable for two reasons. First, Defendant did not acquire any interest in land. The construction concerns the Airport land Defendant already owned. Makrides Decl. ¶ 5. Second, Defendant is not expanding or enlarging the Airport; instead, Defendant is reducing the length of an existing runway from 4,973 feet to 3,500 feet. See id. ¶ 3; RJN, Ex. 18 at 465, 468. Thus, Defendant did not need to hold a public hearing under this statute.[3]

       b. *Irreparable Harm*

Plaintiffs contend a shortened runway "creates a risk of physical harm for anyone piloting or being transported in an airplane departing from the Airport, including [Plaintiffs]" and "those living below the departure path of the Airport." Appl. 5:20-22. But according to Defendant's aviation safety expert, a shortened runway will provide safety benefits, such as by introducing 300-foot safety areas, preventing larger

---

[3] Even assuming a public hearing was required, Defendant held several public hearings concerning the runway shortening, which would have cured the alleged defect. Resp. 13:22-14:13. Plaintiffs' argument—that such public meetings "regarding the *implementation*" of the Consent Decree were insufficient—fails because Defendant was not "acquiring rights in property . . . or agreeing to realign the Airport's existing runway." See Reply 6:21-7:1.

13

and faster aircraft from using the Airport, and reducing the overall frequency of take-offs and landings. Decl. of Tommy McFall ("McFall Decl.") ¶¶ 20-32, ECF No. 38.

Plaintiffs proffer evidence that "pilots who experience engine or other mechanical failure [should] not even attempt to turn back to land on a departure runway below *at least* 400 [feet]," and pilots will now depart at approximately 300 feet above ground level due to the shortened runway. Decl. of R. Christopher Harshman ("Harshman Decl.") ¶¶ 3, 6, ECF No. 6-1. However, according to the FAA, this turn is the "worst possible action" at the Airport regardless of runway length, thus discounting Plaintiffs' argument. McFall Decl. ¶¶ 13-19.

Plaintiffs are also incorrect in arguing a shortened runway will negatively impact the environment. See Harshman Decl. ¶¶ 3-5. Per Resolution 11044, the runway shortening project is categorically exempt under the California Environmental Quality Act ("CEQA"), meaning the determinations of environmental benefits are final.[4] Cline Decl., Ex. E §§ 12-15. Further, through that Resolution, Defendant determined that a shortened runway will reduce "jet traffic, noise impacts and air emissions." Id. § 4.

---

[4] Plaintiffs failed to challenge Defendant's compliance with CEQA within the applicable limitations period. Resp. 22:27-23:4 (citing Cal. Pub. Res. Code § 21167).

Studies also found that the centered option, which Defendant will use to shorten the runway, will "reduce the impact of aircraft exhaust and fumes on surrounding residential neighborhoods." Id. § 8.

Nor is Defendant depriving Plaintiffs access to real property. Plaintiffs still will be able to use the runway in the same condition as everyone else, and Plaintiffs have not shown they have a protectable property interest in the current length of the runway. Resp. 23:10-13. Plaintiffs' cases cited for a contrary proposition are distinguishable. See Reply 9:4-16. For instance, in Peterson v. District of Columbia Lottery & Charitable Games Control Board, No. 94-1643 (JHG), 1994 WL 413357, at *4 (D.C. July 28, 1994), the court found irreparable harm in the foreclosure of the plaintiff's home. In contrast, here, Plaintiffs will still have use of the runway and Airport.

In sum, Plaintiffs are not likely to suffer irreparable harm if construction goes forward.

        c. *Balance of Equities*

The balance of equities tips in Defendant's favor. After years of litigation and debate over the Airport's future, Defendant entered into the Consent Decree and began the process to shorten the runway almost immediately thereafter. Resp. 23:21-24:5. Defendant consulted the community in numerous public hearings and the FAA in developing the plans to shorten the runway. Cline Decl., Exs. E-G. Furthermore, Defendant will

suffer significant financial penalties for delay. Decl. of Rick Valte, P.E. ¶¶ 5-6, Ex. 1, ECF No. 36.

On the other hand, as discussed, Plaintiffs will not suffer irreparable harm. And Plaintiffs should have involved themselves sooner in the planning process to voice their concerns about the project, instead of allowing Defendant to make this much progress before trying to stop it. See Opp'n 8:24-27 (Plaintiffs sent demand letter eighty days after Defendant voted to approve the Consent Decree).

Accordingly, the balance of equities does not tip in Plaintiffs' favor.

    d. *Public Interest*

When the district court issued the Consent Decree at issue here, it found the Consent Decree was "fair, reasonable and adequate to all concerned." RJN, Ex. 5-6. This finding is persuasive "based on the court's extensive oversight of the decree from the commencement of the litigation." Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth., 263 F.3d 1041, 1048 (9th Cir. 2001)(citations omitted); see also United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990)("Because approval of a consent decree is committed to the trial court's informed discretion, the court of appeals should be reluctant to disturb a reasoned exercise of that discretion." (internal citations omitted)).

Likewise, the FAA deemed the Consent Decree "a fair

resolution for all concerned." RJN, Ex. 7; see <u>S.E.C. v. Randolph</u>, 736 F.2d 525, 529 (9th Cir. 1984)("[C]ourts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."). Plaintiffs assert the FAA "flip-flop[ped]" by departing from "decades of FAA precedent." Reply 9:17-20, 10:4-10. But in the case upon which Plaintiffs rely, <u>United States v. Santa Monica</u>, 330 F. App'x 124, 125-26 (9th Cir. 2009), the Ninth Circuit upheld the injunction, preventing Defendant's prohibition of certain classes of aircraft at the Airport, in part on "the FAA's role in ensuring aviation safety." Here, the FAA reviewed Defendant's plan to shorten the runway and made an educated conclusion that the plan does not "appear to impede reasonably continuous and stable operations" at the Airport. RJN, Ex. 21 at 490.

Notably, Santa Monica residents passed Measure LC, placing governance of the Airport in Defendant's hands. Decl. of Denise Anderson-Warren ¶¶ 7-8, Exs. G, I, ECF No. 35. These residents rejected Measure D, which would have mandated voter approval before change in the use of Airport land to non-aviation purposes. <u>Id.</u> ¶¶ 7-8, Exs. H, I. Therefore, the public, including these voting residents, has an interest in this Court upholding the Consent Decree, the one that their representatives approved.

All in all, granting a preliminary injunction would

not further the public interest.

### III. CONCLUSION

Accordingly, Plaintiffs' Application [6] re preliminary injunction is **DENIED**, and the TRO is dissolved. Additionally, Plaintiffs' Request for Reconsideration [45] is **DENIED**. NBAA & AOPA's Application[48] is **GRANTED** in its entirety, and SMAA's Application [47] is **GRANTED in part and DENIED in part**, such that the Court considers the arguments within the Applications but does not delay ruling until SMAA files additional briefing.

**IT IS SO ORDERED.**

DATED: October 16, 2017        s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge