R. Christopher Harshman, Esq. (248214)
  chris@packetlaw.com
David M. Shaby II (97871)
  david@ds4law.com
DAVID M. SHABY II & ASSOCIATES
11949 Jefferson Blvd. Ste 104
Culver City, California 90230
Telephone:  (310) 827-7171
Facsimile:   (310) 382-2092

*Attorneys for Petitioners Kate Scott and
James Babinski*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kate Scott, *et al*,<br><br>                          Plaintiff,<br><br>                vs.<br><br>City Council for the City of Santa Monica, *et al*,<br><br>                          Defendants. | Case no. 2:17-cv-07329-PSG (FFMx)<br><br>Assigned to the Hon. Philip S. Gutierrez<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF SUPERIOR COURT DECISIONS REGARDING INTERPRETATION OF THE BROWN ACT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[DECLARATION OF R. CHRISTOPHER HARSHMAN; [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]<br><br>Date:   November 28, 2017[1]<br>Time:   10:00 a.m.<br>Ctrm:   6A, First Street Courthouse |

---

[1] Or as otherwise may be set by the Court. This matter was set to be heard November 28, 2017 by Judge Lew (ECF No. 58).

1

**To the Court, all Parties, and their Attorneys of Record**:

     **Please take notice** that on November 28, 2017, at 10:00 a.m., or at such date and time as may otherwise be set by the Court, Petitioners Kate Scott and James Babinski ("Petitioners") will and hereby respectfully move the Court to reconsider the decision of Judge Chalfant of the Superior Court of the State of California for the County of Los Angeles, limiting the Petitioners' Brown Act allegations. This motion shall be heard in Courtroom 6A of the above-entitled Court, located at the First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012-4565.

     This motion is brought pursuant to Federal Rule of Civil Procedure 54(b) as interpreted, as set forth more fully in the attached Memorandum of Points and Authorities.

     This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 20, 2017.

                            Respectfully submitted,

                            DAVID M. SHABY II & ASSOCIATES

Date: October 31, 2017     By: /s/ R. Christopher Harshman
                              R. Christopher Harshman, Esq.
                              Attorneys for Petitioners Kate Scott and James Babinsk

## Memorandum

### I.    Introduction

In proceedings before Department 85 of the Central District of the Superior Court of California for the County of Los Angeles ("Superior Court"), Superior Court Judge Chalfant sustained a demurrer, brought by defendant City Council for the City of Santa Monica ("Defendant") with prejudice as to the Brown Act allegations in Petitioners' original petition. Judge Chalfant later, after a hearing on an Order to Show Cause re Dismissal, granted leave to amend on the narrow issue of whether the Defendant's closed session agreement to adopt the settlement agreement ran afoul of express public hearing requirements codified in statute. The transcripts for these hearings have been filed contemporaneously herewith (Declaration of R. Christopher Harshman ("Harshman Decl."), ¶¶ 2-3, Ex. A-B, relevant portions highlighted).

There exists a judicially created narrow exception that permits government entities to agree to settle pending litigation without holding an open meeting, as would ordinarily be required under the Brown Act. Judge Chalfant interpreted that exception as applying to *any* settlement a government entity might decide to enter into, unless a statute specifically required a public hearing.

Petitioners contend that interpretation runs afoul of the express purpose of the Brown Act as stated by the legislature, and as interpreted by the courts of the State of California, requiring legislative acts to be done in open session absent a clear, express, and narrowly construed exception – and that this decision constitutes committed clear error and/or a manifestly unjust decision.

### II.   The Court May Reconsider the Superior Court's Order

As this Court noted: "Under Federal Rule of Civil Procedure 54(b), a party may bring a motion for reconsideration of any order that does not terminate the case before the entry of judgment." October 10th Order, ECF No. 32, citing *Suja Life, LLC v. Pines Int'l, Inc.*, 16CV985-GPC(WVG), 2016 WL 4142337, at *2 (S.D. Cal.  Aug. 4, 2016).

1    This includes an order of the Superior Court, following removal: "The federal rules
2    apply after removal and [t]he federal court . . . treats everything that occurred in the state
3    court as if it had taken place in federal court." *Preseau v. Prudential Ins. Co.*, 591 F.2d 74,
4    79-80 (9th Cir. 1979) (quoting *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963)).
5    "Consequently, an order entered by a state court 'should be treated as though it had
6    been validly rendered in the federal proceeding.'" *Carvalho v. Equifax Info. Servs.*, LLC,
7    629 F.3d 876, 887 (9th Cir. 2010) (quoting *Butner*, 324 F.2d at 786). Once removed,
8    "federal rather than state law governs the future course of proceedings, notwithstanding
9    state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*
10   *& Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974). "The
11   court [has] the authority to dissolve or modify a state court order that was entered prior
12   to removal. See 28 U.S.C. § 1450." *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-1282
13   KJM AC, 2013 U.S. Dist. LEXIS 106001, at *7 (E.D. Cal. July 26, 2013). This Court is
14   not bound by the Superior Court's law and motion rulings, and can revisit them where
15   appropriate. *Preseau*, *supra*, 591 F.2d at 79-80. "Reconsideration is appropriate" where,
16   as here, the earlier court "committed clear error or the initial decision was manifestly
17   unjust." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F. 3d 1255, 1263 (9th
18   Cir. 1993)[2].

19   **III.   THE SUPERIOR COURT DECISION WAS ERRONEOUS AND UNJUST**

20     **A.   The Brown Act Requires Open Meetings and is Liberally Applied**

21     In enacting the Ralph M. Brown Act (the "Brown Act"), the California State
22   Legislature declared:

23

24   [2] Though, to the extent, the Court's Local Rule 7-18 *might* be interpreted as limiting the availability of a
25   motion, or application, for reconsideration to one where new material facts are present, "[a] court's
     local rule is invalid if it conflicts with the Federal Rules of Civil Procedure. *Mutual Fund Investors, Inc. v.*
26   *Putnam Mgmt.*, 553 F.2d 620, 625 (9th Cir. 1977); *see also Hajek v. Burlington N. R.R. Co.*, 186 F.3d 1105,
     1109 (9th Cir. 1999)." *EEOC v. United States Bakery*, No. CV 03-64-HA, 2003 U.S. Dist. LEXIS 25529,
27   at *4-5 (D. Or. Nov. 20, 2003); *see also*, *e.g.*, *Richards v. Brooks*, No. 98-15831, 1999 U.S. App. LEXIS
     21088, at *8 (9th Cir. Sep. 1, 1999) (citing *Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1994) as
28   authority that "the Federal Rules trump any conflicting local rules").

> In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.
>
> The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.[3]

The express purpose of the Brown Act is to assure that local government agencies conduct the public's business openly and publicly. Courts broadly construe the Brown Act in favor of greater public access and narrowly construe exemptions to its general rules, as required by Article 1, Section 3(b)(2) of the California Constitution: "A statute, court rule, or other authority … shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access…"

"[T]he Brown Act should be interpreted liberally in favor of its open meeting requirements, while the **exceptions to its general provisions must be strictly, or narrowly, construed**." *Shapiro v. San Diego City Council*, 96 Cal. App. 4th 904, 920 (2002) (internal quotations omitted, emphasis added). "The important policy considerations of the Brown Act … must be enforced, even where particular transactions do not fit neatly within its statutory categories." *Id*. at 924. "Statutory **exceptions authorizing closed sessions of legislative bodies are construed narrowly** and the Brown Act 'sunshine law' is **construed liberally in favor of openness in conducting public business**." *Page v. MiraCosta Cmty. Coll. Dist*., 180 Cal. App. 4th 471, 501 (2009) (internal quotations and citations omitted, emphasis added). (As discussed *infra*, the ability of a legislative body to meet in closed session to agree to *settle* pending litigation was created by judicial interpretation – and not without controversy, explored below. The text of the statutory exception is much more limited. Cal. Gov't Code § 54956.9(a).

---

[3] California Government Code section 54950

**B.     Exceptions Must Not Be Used to Legislate Secretly**

California Supreme Court Justice Baxter warns against "a widespread danger of secret 'government by lawsuit,' in which state agencies conduct their most important regulatory business in private, through the device of settling litigation." *S. Cal. Edison Co. v. Peevey*, 31 Cal. 4th 781, 806 (2003) (conc. & dis. opn). "The Brown Act is intended to ensure the public's right to attend public agency meetings to facilitate public participation in all phases of local government decisionmaking, and to curb misuse of the democratic process by secret legislation of public bodies." *Chaffee v. S.F. Library Com.*, 115 Cal. App. 4th 461, 469 (2004). "The public has a right to know what decisions government officials make and to have officials articulate fully the basis on which they act. To the extent officials seek to evade public scrutiny altogether, to avoid public discussion, to forge a majority in advance of public hearings on an issue, or to hide improper influences such as personal or pecuniary interest, public opprobrium is appropriate." *Regents of Univ. of Cal. v. Superior Court*, 20 Cal. 4th 509, 541-42 (1999).

City Council resolutions must be made in open session with an opportunity for public comment: "In the absence of statutory or charter provisions to the contrary, a legislative act may be either by resolution or ordinance … Thus, a resolution in effect encompasses all actions of the municipal body other than ordinances." The California Municipal Law Handbook (Cal CEB), § 1.230 (collecting authority). "An ordinance may only be adopted by the legislative body," (*Id.*, § 1.245), and may only be "amended by another resolution or by ordinance." *Id.* "[A]ll resolutions require a recorded majority vote of the total membership of the city council." *Id.*, § 1.248 (citing Gov't Code § 36936).

The default approach to governance codified in the Brown Act is **open, transparent** government.

Here, the "City Council is attempting to use the Brown Act as a shield against public disclosure of its consideration of important public policy issues." *Shapiro*, *supra*.

**C.    The Pending Litigation Exception Excludes Nonlitigation Oriented Policy Decisions**

California Government Code Section 54956.9(a) permits a legislative body to "hold[] a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation." That exception to the Brown Act's public meetings requirement has been judicially interpreted as permitting a closed session agreement to settle litigation:

> The section has been interpreted by this state's high court to permit the legislative body to "confer with its attorney and then decide in private such matters as the upper and lower limits with respect to settlement, whether to accept a settlement or make a counter offer, or even whether to settle at all. …" (*Peevey*, *supra*, 31 Cal.4th at pp. 799–800 [relying on and quoting 75 Ops.Cal.Atty.Gen. 14 (1992) to interpret similarly worded provision in the Bagley-Keene Open Meeting Act (§ 11120 et seq.)]; see *Trancas*, 138 Cal.App.4th at p. 187 [referencing to such action as an "implied exception for adoption of litigation settlements in closed session"].) " 'These are matters which will depend upon the strength and weakness of the individual case as developed from conferring with counsel. A local agency of necessity must be able to decide and instruct its counsel with respect to these matters in private.' " (*Peevey*, at p. 799, quoting 75 Ops.Cal.Atty.Gen., supra, at pp. 19–20.)

*Page*, *supra*, 180 Cal. App. 4th at 498-99.

However, this judicially constructed exception is limited:

> [S]ection 54956.9 does not by its terms provide for entry into or approval of settlements in closed session, at all. Rather, the statute has been construed to allow a city council to do so. (E.g., 75 Ops.Cal.Atty.Gen. 14 [1992; 1992 Cal. AG LEXIS 2], *supra*; but see *Southern California Edison Co. v. Peevey*, *supra*, 31 Cal.4th [781] (2003) at pp. 813–814 (conc. & dis. opn. of Baxter, J.).) But **this implied exemption is subject to narrow construction**. (*Shapiro*, supra, 96 Cal.App.4th at p. 917; accord, *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 185 [35 Cal. Rptr. 3d 826].) And as "emphasized" in the Attorney General's manual on the Brown Act, "the purpose of [section 54956.9] is to permit the body to receive legal advice and make litigation decisions only; **it is not to be used as a subterfuge to reach nonlitigation oriented policy decisions**." (Cal. Dept. of Justice, Off. of Atty. Gen., The Brown Act (2003), p. 40.)

*Trancas Prop. Owners Ass'n v. City of Malibu*, 138 Cal. App. 4th 172, 186 (2006) (emphasis added)[4].

The *Trancas* court's adoption of the Attorney General's Brown Act manual has been quoted with approval in subsequent decisions, e.g., *Page*, *supra*, 180 Cal. App. 4th at 503, which instructs:

> To determine whether these allegations state a cause of action for violation of the Brown Act's section 54956.9, **we are guided by the principle that "'[s]tatutory exceptions authorizing closed sessions of legislative bodies are construed narrowly and the Brown Act "sunshine law" is construed liberally in favor of openness in conducting public business.'"** (*Shapiro*, *supra*, 134 Cal.App.4th at pp. 180–181, quoting *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917; *see also Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 378 (Roberts) [1987 amendment to Brown Act "was intended to make it clear that closed sessions with counsel could *only* occur as provided in the Brown Act" (italics added)]; *Wolfe v. City of Fremont* (2006) 144 Cal.App.4th 533, 545 [Brown Act is a remedial statute that must be construed liberally so as to accomplish its purpose]; 71 Ops.Cal.Atty.Gen. 96, 105 (1988) ["Litigation exceptions to the Ralph M. Brown Act's open meeting requirements ... must be strictly construed."].) Further, we are cognizant that Brown Act open meeting requirements encompass not only actions taken, but also factfinding meetings and deliberations leading up to those actions. (See § 54950 ["It is the intent of the [Brown Act] that [public agency] actions be taken openly and that their deliberations be conducted openly."]; *Roberts*, at p. 375; *Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781, 794; *216 Sutter Bay Assocs. v. County of Sutter*, *supra*, 58 Cal.App.4th at pp. 876–877; 63 Ops.Cal.Atty.Gen. 820, 825 (1980) ["[T]he intent of the Act was that deliberations as well as actions be taken openly."].) "'Deliberation in this context connotes not only collective decisionmaking, but also "the collective acquisition and exchange of facts preliminary to the ultimate decision."'" (*216 Sutter Bay*, at p. 877.)

---

[4] The Trancas court was presented with the question of whether the litigation exception to the Brown Act authorized agreeing to settle litigation "'concerning' matters ordinarily dealt with in open session" (*Id.*) but, because the facts in *Trancas* implicated "extrinsic laws requiring public hearings" (*Id.*), the *Trancas* court confined its analysis and holding to that scenario, while prefacing the discussion with: "Section 54956.9's implied allowance for adoption of settlements in closed session thus may be subject to limits. And whatever else it may permit, the exemption cannot be construed to empower a city council to take or agree to take, as part of a non-publicly ratified litigation settlement, action that by substantive law may not be taken without a public hearing and an opportunity for the public to be heard."

*Page*, *supra*, at 501-02 (internal pagination and parallel citations omitted; italics original). Petitioners note the *Peevey* court, in finding an exception to the Brown Act's codified general rule that meetings must be conducted openly, relied on an Attorney General's opinion, just as *Trancas* (and later decisions) rely on the Attorney General's Brown Act manual.

### D.   The Settlement Agreement Reaches Beyond Litigation

The Defendant entered into a settlement agreement and consent decree (the "Settlement Agreement") that resolved three cases: *Santa Monica v. U.S.*, C.D.Cal. docket no. 13-8046 (the "District Court Action"); *Santa Monica v. FAA*, 9th Cir. docket no. 16-72827 (the "Ninth Circuit Petition"); and the Federal Aviation Administration ("FAA") administrative proceeding[5] *In re Santa Monica*, FAA docket no. 16-16-13 (the "Part 16 Investigation").

The complaint in the District Court Action alleged five causes of action for: Quiet Title (Harshman Decl., Ex. C, pp. 21-24); Violations of the Fifth Amendment under theories of Taking (*Id.*, pp. 24-26), Regulatory Taking (*Id.*, pp. 26-27), and due process (*Id.*, pp. 30-31); and Violation of the Tenth Amendment (*Id.*, pp. 28-29). The prayer for relief (*Id.*, pp. 31-33) demanded: Declaratory judgments regarding the title to the Airport Property and the City's contentions regarding violations of the United States Constitution (*Id.*, 31:26-32:23); that the court "enjoin the United States from taking any action affecting Santa Monica's right, title, or interest in the Airport Property … from demanding or asserting in any forum that Santa Monica must operate the Airport Property as an airport in perpetuity" (*Id.*, 32:24-28); and that the court "order that the United States shall cease and desist from taking any action to require Santa Monica to operate the Airport Property as an airport after the 1984 Agreement expires in July of 2015" (*Id.*, 33:1-3).

The Ninth Circuit Petition was a formal request to the United States Court of Appeals to review the legality of the FAA's administrative decision, and sought a

[5] A Federally-Assisted Airport Enforcement Proceeding brought pursuant to 14 C.F.R. Part 16

1    "review of the Final Agency Decision and Order entered on August 15, 2016, and issued

2    by the FAA in *National Business Aviation Association, et al., v. City of Santa Monica*, FAA

3    Docket No. 16-14-04." (Harshman Decl. Ex. D, p. 1 of 55.) That Final Agency Decision

4    and Order affirmed (*Id*., p. 22 of 55) an earlier Director's Determination "that the

5    Respondent City of Santa Monica remains obligated by the grant assurances until August

6    27, 2023." (*Id*., p. 49 of 55.) The petition for review sought a declaration that the FAA's

7    decision was invalid.

8        The FAA, in its Part 16 Investigation (Harshman Decl., Ex. E, pp. 7-8), raised the

9    following issues: Whether the Defendant's refusal to enter into leases with aeronautical

10   tenants was a grant assurance violation; whether the Defendant's planned proprietary

11   exclusive operation was a grant assurance violation (and whether the Defendant was

12   ready, willing, and able to run such an operation); and whether the Defendant's attempts

13   to remove two fixed base operators was a grant assurance violation. In that action, the

14   FAA could have ultimately rescinded eligibility for future grants, issued a cease and

15   desist order, or issued "any other compliance order issued by the Administrator to carry

16   out the provisions of the [applicable federal law]." 14 C.F.R. § 16.109.

17       The Settlement Agreement incorporates the following results that could not have

18   been reached through any of the above actions: Changing the runway configuration, from

19   4,973 feet to 3,500 feet in length and the construction and maintenance of runway safety

20   areas at both runway ends (Section II); creating an avigation easement (Section III);

21   restricting the City's ability to provide aeronautical services under a proprietary

22   exclusive right (Sections IV(C)-(D)); and requiring the City to operate the Airport "until

23   December 31, 2028" (Section VI), an arbitrarily chosen date[6]. Meanwhile, the

24   ---

[6] If the City had won its District Court Action but lost the Ninth Circuit Petition, the airport would have

25   been federally obligated until August 2023; if the City had lost the District Court Action but prevailed in

     the Ninth Circuit Petition, the airport would have been federally obligated under the Surplus Property

26   Act ("SPA") provisions and other statutes in perpetuity; if the City had prevailed in both the District

     Court Action and Circuit Court Petition, presumably the City would have closed the airport in August

27   of 2018 as resolved by the City Council in March of 2016; if the City had lost both actions, the airport

     would have been bound by grant assurances until 2023 and thereafter under the SPA and other statutes

28   in perpetuity.

Settlement Agreement reverses several resolutions adopted by the Defendant in open meetings, including Resolutions 183, 10988, 6296, and other policies. (Verified Amended Petition, ECF No. 6-4, ¶¶ 28-29.)

E.    **The Defendant's Closed Session Agreement Violates the Brown Act**

There is little doubt the Santa Monica Municipal Airport is a "hot-button" issue in Santa Monica city politics. When significant airport-related matters are on the agenda for an open meeting, often more than a hundred members of the public appear and speak for hours. (Verified Amended Petition, ¶ 27.) When "the public interest in resolving [a] controversy is substantial" (*Cal. All. for Utils. Etc. Educ. v. City of San Diego*, 56 Cal. App. 4th 1024, 1030 (1997)), this is a factor that must be weighed in determining the proper application of the Brown Act. "[W]e must construe the exceptions to the open meeting provisions of the Brown Act narrowly and the provisions calling for open meetings and public participation broadly to effectuate the important purposes of the Brown Act. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917; *San Diego Union v. City Council* (1983) 146 Cal.App.3d 947, 954–955.)" *Galbiso v. Orosi Pub. Util. Dist.*, 167 Cal. App. 4th 1063, 1080 (2008).

Here, the Defendant wrongfully used the 'litigation exception' to the Brown Act as a shield, abusing a closed session to agree to enter into a sweeping settlement agreement that undid decades of resolutions and other actions taken after hours upon hours of significant public input at open meetings. The settlement agreement encompasses nonlitigation oriented policy decisions that were required to be put to the public in an open process, and were not.

F.    **Decision Limiting the Petitioners to Allegations Regarding a Required Public Hearing was Clear Error or Manifestly Unjust**

Judge Chalfant, in his tentative ruling on the City Council's demurrer (Harshman Decl, Ex. F), doesn't even mention *Trancas* and touches only briefly on the statutory exception authorizing a city council to discuss pending litigation in closed session. Following oral argument on the demurrer, where *Trancas* and the inability of a city

9

1  council to use the 'litigation exception' to take action that would ordinarily have to be

2  done in an open session, Judge Chalfant issued an order to show cause re dismissal.

3  Petitioners again raised the narrowness of the exception in their opposition to the

4  demurrer (ECF No. 1-9) and in their response to Judge Chalfant's Order to Show Cause

5  (ECF No. 1-15), to no avail – Judge Chalfant had decided, without relying on any

6  authority, that the judicially created exception that permitting a city council to agree to

7  settle litigation in closed session despite the Brown Act's open meetings requirement,

8  applied in *all* cases unless a statute expressly required a public hearing prior to taking

9  action called for in a settlement agreement. That is an erroneous reading of *Trancas* and

10 other authority, which do not create so broad an exception. Indeed, the courts caution

11 the exception is to be ***narrowly*** and ***strictly*** applied, and that it cannot be extended to

12 reach non-litigation oriented policy decisionmaking, as the City Council did here.

13 Depriving the public of its right to comment, in an open meeting, on such a momentous

14 issue, is manifestly unjust, and flies in the face of the express purpose of the Brown Act.

## IV.   CONCLUSION

16     Judge Chalfant's decision was erroneous and manifestly unjust, and is

17 unsupported by precedent or the critical public policy – openness of government –

18 codified in the Brown Act. That public policy, echoed in multiple interpreting decisions,

19 requires public participation and forbids secret legislation on this issue of great public

20 importance and interest. The Court can and must reconsider Judge Chalfant's incorrect

21 decision to wrongly limit the Petitioners' Brown Act allegations to a claim involving a

22 codified statute requiring a public hearing.

23                                        Respectfully submitted,

24                                        DAVID M. SHABY II & ASSOCIATES

25 Date: October 31, 2017        By: /s/ R. Christopher Harshman

26                                        R. Christopher Harshman, Esq.
                                          Attorneys for Petitioners Kate Scott and James Babinski

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TITLE